

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Charles Frederick Biehl<br><br>                           Debtor(s). | Case No: 6: 13-bk-26277-MH<br><br>Chapter: 7<br><br>**MEMORANDUM DECISION AND ORDER RE: ORDER TO SHOW CAUSE RE: CONTEMPT FOR VIOLATION OF AUTOMATIC STAY** |

### A. PROCEDURAL BACKGROUND

On September 30, 2013 ("Petition Date"), Charles Biehl ("Debtor") filed a Chapter 7 voluntary petition. John P. Pringle is the duly appointed Chapter 7 Trustee ("Trustee"). Among the assets of the Debtor's estate is property located at 6 Dover Court in Rancho Mirage, CA (the "Property").

On May 11, 2016, the Debtor filed a motion for an order holding creditor Lawrence Shanahan ("Shanahan") and creditor Nicole Rudat ("Rudat") in Civil Contempt for violation of the § 362 automatic stay ("OSC Motion"). No objection was filed. On May 23, 2016, the Court issued the

Order to Show Cause (the "OSC") requiring creditors Shanahan and Rudat (collectively, the "Respondents") to appear and show cause why they should not be:

(1) Held in civil contempt for willfully violating the automatic stay provisions of 11 U.S.C § 362(a) of the Bankruptcy Code;
(2) Ordered to pay the Debtor actual damages in the amount of $21,604.00, $50,000.00 in punitive damages, and $10,000.00 in emotional damages; and
(3) Ordered to take affirmative steps to vacate any and all collection actions taken by them against the Debtor which violated the automatic stay provisions of the bankruptcy code, and specifically taken against the Debtor in Superior Court Case No. INC 1206464.

The original hearing was set for June 22, 2016. Since that time, the parties stipulated twice to a continuance of the hearing. The Order Approving Stipulation to Continue Hearing on OSC on July 14, 2016, set the hearing on September 21, 2016, and required responses by Respondents by August 26, 2016, with any reply due by September 9, 2016.

Respondents timely filed their responses on August 26, 2016. Debtor timely filed his reply on September 9, 2016. On September 21, 2016, the hearing was continued for additional briefing. On October 5, 2016, Shanahan filed a supplemental brief. On October 19, 2016, Debtor filed a reply. On November 8, 2016, this Court entered an interim order finding that the automatic stay had been violated on multiple occasions. Specifically, the Court identified three violations of the automatic stay: (1) the sale of the Property on January 14, 2016; (2) the recording of the deed on January 27, 2016; and (3) Rudat's ongoing failure to reconvey title to the property. Additionally, the Court's interim order entered on November 8, 2016, directed Rudat to reconvey title to the Property by no later than November 16, 2016.

On November 18, 2016, Rudat's attorney, Fritz Firman ("Firman") filed a declaration stating that the Riverside County Recorder's Office rejected the deed of full reconveyance for technical reasons, but he had rectified the error and intended to record the deed on November 21, 2016. On November 21, 2016, Rudat filed a declaration stating that the deed of full reconveyance had been recorded, recordation number 2016-0518800.

On December 14, 2016, Debtor's attorney, Steven Bryson ("Bryson") filed a supplemental declaration regarding additional attorney's fees and costs and appropriate sanctions. On December 21, 2016, Shanahan filed a response. On January 4, 2017, this Court held a further hearing, which was continued to allow the parties a final chance to settle the dispute. On January 13, 2017, Bryson filed a status report indicating that the parties would not be able to reach a settlement.

## B. FACTUAL BACKGROUND

After the Petition Date, on September 8, 2014, Shanahan obtained a state court default judgment against Debtor in violation of the stay and without having sought relief from the automatic stay. Subsequently, Shanahan applied to the state court for an order to show cause why the Property should not be sold, and on May 19, 2015, Shanahan continued the litigation by filing a supplemental brief in state court in support of the state court order to show cause. As evidence of

the fact that Shanahan had knowledge of the bankruptcy filing, Debtor asserts that the supplemental brief filed by Shanahan included a copy of his bankruptcy schedules. The state court ordered that the Debtor's residence be sold on or about July 1, 2015. On November 23, 2015, a Notice of Sheriff's sale was issued setting a sale date for January 14, 2016. Debtor personally had notice of Shanahan's efforts to recover against the Property, in violation of the stay, by no later than July 6, 2015, when Debtor indicated awareness that Shanahan's state court proceedings were still proceeding. Further, on December 4, 2015, Debtor indicated receipt of a writ of execution. Debtor's awareness of continuing stay violations during the latter half of 2015 is documented in his opposition to Rudat's motion to annul the stay. (Doc No. 91-95).

On January 14, 2016, the Property was sold to Rudat at a sheriff's sale. On January 27, 2016, Rudat recorded a sheriff's deed in Riverside County.

On March 14, 2016, Rudat filed a motion for relief from the automatic stay – unlawful detainer, seeking to retroactively annul the stay so as to validate the sheriff's sale and recording of deed. At a hearing on March 22, 2016, the Court continued the matter to allow for additional briefing. On April 6, 2016, Rudat filed a reply. Debtor filed supplemental opposition on April 18, 2016, and Rudat filed a supplemental reply on April 26, 2016.

At the May 10, 2016, hearing, the Court denied the motion, noting that retroactively annulling the stay to validate the sale of the property would not be proper without retroactively validating the state court judgment that authorized the sale. The state court judgment, however, was a proceeding to which Shanahan was a party, not Rudat. The Court concluded that it did not have a sufficient factual basis to validate the void state court judgment, and, even if such a factual basis were present, Rudat's motion did not request that relief. Therefore, the motion was denied. On May 11, 2016, Debtor filed this motion for contempt against Respondents.

### C. DISCUSSION

#### I.   *Amount of Requested Damages*

Debtor identifies $13,204 in attorney's fees arising from opposing Rudat's motion to annul the stay, and $23,434 arising from the OSC and related proceedings. Debtor also estimates $2,400 in fees relating to the January 4, 2017 hearing. Debtor further requests $15,547.92 in punitive damages against Rudat for continuously failing to reconvey title, equivalent to the amount of Debtor's mortgage payment during the six months that Rudat retained title.

Shanahan's response states that he is not responsible for the fees relating to Rudat's motion to annul the stay. Shanahan further argues that only $9,720 of the fees related to the contempt proceedings should be held against him and that the additional costs represents fees incurred solely due to Rudat's delay in reconveying the Property.

#### II.   *Legal Standard*

11 U.S.C. § 362(k)(1) (2010) states:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Court has already held that a willful violation of the stay occurred. Therefore, the remaining issues to be decided are the amount of appropriate damages, and the distribution of liability between Rudat and Shanahan

The Ninth Circuit, until recently, maintained a narrow reading of § 362(k)(1), stating that:

> The dictionary defines "actual damages" as "an amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY 416 (8th ed. 2004). Following this definition, the proven injury is the injury resulting from the stay violation itself.

*Sternberg v. Johnston*, 595 F.3d 937, 947 (9th Cir. 2009). The *Sternberg* court described the automatic stay as a "shield, not a sword." *Id*. at 948. It characterized the function of the automatic stay as "enabling the debtor to try to reorganize during a break from collection efforts and protecting creditors by preventing one creditor from pursuing its own remedies to the detriment of its co-creditors." *Id*. at 947. The *Sternberg* court reasoned that allowing fees to be collected for "prosecuting a damages action would further neither the financial nor the non-financial goals of the automatic stay." *Id*. at 948. Therefore, the court concluded that the allowable fees were those "properly allocable to efforts to enforce the automatic stay and prevent enforcement of [actions] that violated the stay." *Id*.

The Ninth Circuit has most recently expanded its reading of § 362(k)(1) in *In re Schwartz-Tallard*. 803 F.3d 1095 (9th Cir. 2015). The court stated: "To uphold *Sternberg's* interpretation of § 362(k), we would have to read into the statute limiting language – something like, 'including costs and attorneys' fees *incurred to end the stay violation*" – that is simply not present. *Id*. at 1099. The court concluded that costs incurred in pursuing damages related to the violation of the automatic stay were recoverable – expanding a court's ability to trace subsequent damages to an original stay violation. *See generally id*. The Court will consider the legal fees requested under the standard established by *Schwartz-Tallard*.

### III. Rudat's Request to Annul the Stay

First, Debtor requests $13,204 in attorney's fees relating to the motion to annul the stay. The filing of a relief from stay motion is not, itself, a violation of the automatic stay for two reasons. First, Rudat's motion does not fit within any of the categories of stayed acts under § 362(a). Second, Rudat's motion is specifically authorized under § 362(d) and, also in accordance with the Court's order of November 8, 2016, the motion is not a violation of § 362(a). *See In re Roxford Foods, Inc.*, 12 F.3d 875, 878 (9th Cir. 1993) ("Our decision on this issue is controlled by our decision in *Teerlink Ranch*, where this court found the automatic stay inapplicable to a suit commenced in the same court where the bankruptcy was pending."). The fact that Rudat's

motion was an attempt to validate a past violation of the stay makes no difference because § 362(d) specifically authorizes the granting of retroactive relief that annuls the stay. The denial of Rudat's motion means that the sale and recording of the property are violations of the stay; it does not make Rudat's motion for relief from stay a violation itself. *See, e.g.*, *id.*

Even though Rudat's motion is not, itself, a violation of the automatic stay, under *Sternberg*, fees are allowed if the fees are "properly allocable to efforts to enforce the automatic stay and prevent enforcement of [actions] that violated the stay." *Schwartz-Tallard* specifically extended the application of § 362(k)(1) beyond actions taken as a direct and necessary response to a stay violation. 803 F.3d at 1099 (declining to read into the statute "attorneys' fees incurred to end the stay violation"). *Schwartz-Tallard* was a narrow ruling, however, specifically limited to the pursuit of damages arising from a stay violation and largely based upon legislative history and policy justifications. *See generally id*.

Because the narrow ruling of *Schwartz-Tallard* is inapplicable to this case, the framework of *Sternberg*, guided by the rationale of *Schwartz-Tallard*, is the primary guide. The first question, under *Sternberg* is whether opposing Rudat's relief from stay motion constitutes an action to enforce the automatic stay, whether it constitutes an action to prevent enforcement of an action that violated the stay, or whether is falls outside that definition. *See* 537 F.3d 948. An objection to a motion for relief from the automatic stay is not an effort to "enforce" the stay. "Enforce" is an active word that contemplates affirmative action by a debtor. *See, e.g.*, *In re Pace*, 159 B.R. 890, 901 (B.A.P. 9th Cir. 1993) ("Additionally, an award of attorneys' fees is appropriate where an initial violation of the stay is followed by [the aggrieved party] having to resort to the courts to enforce his rights."); *In re American Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr C.D. Cal. 2015) (debtor responded to motion to annul the stay by filing a motion to enforce the stay); BLACK'S LAW DICTIONARY (10th ed. 2014) (enforce) ("[t]o give force or effect to (a law, etc.); to compel obedience to."). Responding to a motion for relief from the stay, on the contrary, does nothing to "enforce" the automatic stay since a denial of the motion leaves the parties in the same situation as if the motion was never brought in the first place; there is no benefit to the debtor. *Cf. Schwartz-Tallard*, 803 F.3d 1095 (debtor filed motion to enforce stay and requested damages simultaneously).

Additionally, Debtor's opposition to Rudat's motion does not constitute an action to prevent enforcement of an action taken in violation of the automatic stay. Rudat's motion seeks a determination that certain acts taken by Rudat and/or Shanahan did not violate the automatic stay. It does not seek a determination that certain actions taken by Rudat and/or Shanahan should be permitted, despite their violation of the automatic stay. Therefore, a motion to annul the stay does not constitute an attempt to enforce an action in violation of the stay. *See, e.g.*, *In re Schwartz*, 954 F.2d 569, 573 (9th Cir. 1992) ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue.").

Even though defending Rudat's motion to annul the stay does not fit within the *Sternberg* framework, *Schwartz-Tallard* has expanded the scope of damages based on policy justifications. In this case, however, the policy reasons weigh against awarding Debtor's compensatory damages. Because Rudat's motion is specifically contemplated by the Bankruptcy Code,

awarding Debtor compensatory damages for a motion that Rudat was entitled to bring may discourage creditors from filing motions to annul. *See, e.g.*, *In re Carter*, 2016 WL 1704719 at *5 (B.A.P. 9th Cir. 2016) ("The Bankruptcy Code does provide an 'out' for inadvertent stay violators facing the threat of damages for willful violation of the stay if they don't unwind the effects of their inadvertent stay violations: the stay violator may file a motion to annul the stay under § 362(d)."). By its very nature, a motion to annul the stay to validate post-petition actions necessarily implies that actions were taken in violation of the automatic stay.

Furthermore, the policy rationale requires differentiating between opposing a motion for relief from stay, on the one hand, and affirmatively bringing a motion for contempt based on a stay violation, on the other hand. As discussed above, this distinction encourages debtors to timely assert their rights, and increases judicial economy. In this case, the situation is exacerbated, in part, because Debtor did not take any affirmative action to enforce his rights for an extensive period of time. The state court proceeding initiated by Shanahan against Debtor continued for more than a year post-petition, and resulted in a sale being ordered by the state court, the issuance of a notice of sheriff's sale, the sale of Debtor's property, and the recording of the deed. During all this time, despite ample notice of the actions being taken, Debtor did nothing to enforce his rights or end the stay violation. The exhibits filed by Debtor in opposition to Rudat's motion to annul the stay contain evidence that Debtor clearly knew Shanahan's efforts to sell the property by no later than December 2015. Of additional significance, Shanahan was not given notice of the filing of the bankruptcy case at its inception. Yet, no objection was made by Debtor, nor was any clear notice directed to Shanahan, or, later, Rudat, that their actions were in contravention of the automatic stay until May 2016. Even after Rudat purchased the property and recorded the deed, Debtor did not take actions to enforce the automatic stay until after Rudat sought to annul the stay.

The Court has an obligation to consider Debtor's failure to promptly mitigate the damages. *See In re Roman*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002) ("Consequently, there is also a consensus in the case law that, in determining reasonable damages under § 362(h), the bankruptcy court must examine whether the debtor could have mitigated the damages."). Debtor's failure to mitigate damages by promptly addressing the stay violation is an additional reason why Debtor's response to Rudat's motion for relief from stay should not be a cost within the scope of 11 U.S.C. § 362(k)(1). *See, e.g.*, *In re Yantis,* 553 B.R. 351, 355 (Bankr. N.D. Ind. 2016) ("As to costs and attorney fees, debtors faced with violations of the stay have a duty to mitigate their damages."); *In re Lori*, 241 B.R. 353, 357 (Bankr. M.D. Pa. 1999) ("The Debtor has a duty to mitigate damages [under § 362(h)]."); *In re Clayton*, 235 B.R. 801, 812 (Bankr. M.D.N.C. 1998).

For the foregoing reasons, the Court declines to award any sanction for fees incurred in connection with Rudat's motion to annul the stay.

    IV.    *Damages for Stay Violations*

Next, Bryson requests $25,834 for fees related to the sanctions proceedings. Shanahan contends he should not be held liable for increased litigation costs in the OSC proceedings due to Rudat's delay in reconveying the Property. Shanahan does not, however, explain what the cut-off point is, but, instead, relies on an outdated estimation provided by Bryson at the time of the filing of

the original motion for contempt, which estimated costs of bringing the motion to be $9,720. This Court did not formally order reconveyance of the property until November 8, 2016. Therefore, it is difficult to ascertain why Rudat would be solely liable for the costs that were incurred between May 11, 2016 (the filing of the motion) and November 8, 2016. While Rudat clearly failed to reconvey during this period, it is not apparent that any briefing, and, any significant costs incurred, was solely caused by this refusal. During that time, the proceeding was continued once to allow Respondents additional time to file opposition, and a second time to allow for settlement discussions. Therefore, the Court declines to implement a cut-off date after which all costs incurred are to be borne by Rudat.

The Court will, however, relieve Shanahan from liability for costs that were incurred by Debtor as a result of Rudat's failure to abide by the November 8 order. The hearing on January 4, 2017 was to occur regardless of Rudat's compliance (albeit possibly at a different date), and briefing which identified fees was not caused by any non-compliance by Rudat. Reviewing Bryson's billing records reveals the following entries that are clearly caused by Rudat's refusal to reconvey the property:

   (1) 9/22/2016 (Letter to Fritz Firman re: demand to reconvey Dover Ct. property) $120
   (2) 11/4/2016 (Telephone conversation with client re: results of hearing and various options concerning failure to Rudat to return title as required by court) $240
   (3) 11/16/2016 (Appearance at holding date scheduled for creditor Rudat to complete re-conveyance of Dover Court property. Court instructed Rudat to file declaration with court evidencing re-conveyance by 11/18/2016) $1,804

Additionally, the Court notes that the following entries of Bryson appear to be uniquely attributable to Rudat:

   (1) 6/6/16 (Telephone conversation with attorney for Rudat re: stipulation to continue contempt proceeding) $60
   (2) 7/13/16 (Telephone conversation with Fritz Firman representing Rudat re: continuance of contempt hearing date and possible settlement areas) $80
   (3) 9/20/16 (Telephone conversation with Fritz Firman re: possible settlement of contempt action) $80

Therefore, Rudat will be solely liable for the $2,384 in fees identified above, leaving $23,450 in requested fees remaining.

Shanahan and his counsel, on the other hand, mounted a vigorous defense during the proceedings. While the Court does not fault Shanahan and his counsel for their spirited defense, many of the requested fee entries do not relate to actions taken by Rudat. The Court finds the following entries relate specifically to defenses of Shanahan:

   (1) 5/16/16 (Telephone conversation with attorney Reitman re: motion filed for contempt and issues related thereto) $300
   (2) 5/16/16 (E-mail to attorney Reitman confirming phone discussion) $80

(3) 5/16/16 (E-mail to client re: phone conversation with attorney Reitman and issues raised) $120
(4) 5/25/16 (Service fees, personal service re: civil contempt on Lawrence Shanahan) $164.50
(5) 5/31/16 (Telephone conversation with client re: allegations raised by Shanahan to contempt charge; consideration of stipulation to continue contempt proceeding) $100
(6) 6/1/16 (Telephone conversation with attorney for Shanahan re: possible settlement terms) $160
(7) 7/12/16 (E-mail to attorney Thomas Eastmond re: possible additional continuance of hearing; phone conversation with client) $200
(8) 7/13/16 (Telephone conversation with Cathy Ta at Best Best & Krieger re: stipulation to continue briefing schedule and hearing date for motion for sanctions) $160
(9) 9/4/16 (Research and preparation of initial draft of reply brief) $1,720
(10) 9/5/16 (Preparation of final draft of reply brief) $1080
(11) 9/8/16 (Review of reply brief to opposition to motion for contempt and revisions thereto) $560
(12) 10/7/16 (Review of supplemental brief of Lawrence Shanahan re: inadvertent violation of the automatic stay; review of case cited and shepardized cases citing same; communication with client) $720
(13) 10/14/16 (Preparation of initial draft of reply to supplemental brief of Shanahan re: violation of stay; review of cases in opposition) $920
(14) 10/17/16 (Preparation of completion of reply brief to supplemental response filed by Shanahan; declaration of Bryson in support) $1,320
(15) 10/17/16 (Telephone conversation with client re: settlement proposed offered by Shanahan to resolve contempt proceeding; analysis of offer) $240
(16) 10/31/16 (E-mail to Thomas Eastmond re: his offer of settlement of case) $120
(17) 11/1/16 (Telephone conversation with client re: current settlement offer of Mr. Eastman. Email back to Mr. Eastman rejecting offer) $240

The above fees total $8,204.50, leaving $15,245.50 in requested fees remaining.

Contained within the time entries for this $8,204.50, however, are fees the Court finds should be reduced because of failure to mitigate by Debtor, as discussed in section C.III, *supra*. Specifically, Debtor's failure to take action to end the stay violation prior to the sale of the Property and recording of the deed has produced a complicated factual scenario and directly caused additional briefing by both Debtor and Shanahan. Throughout the proceedings, Respondents have, implicitly or explicitly, relied upon Debtor's failure to mitigate damages in constructing their arguments. Furthermore, mitigation by Debtor could have had the effect of eliminating any stay violation by Rudat altogether. On this point, the Court re-emphasizes that Debtor knew, at the latest, as of December 2015, that Shanahan was attempting to recover against the Property, yet failed to take action for more than five months, greatly contributing to the delay and expense of this matter. Because the extent and complexity of these proceedings is attributable in part to Debtor's failure to mitigate damages, the Court concludes that it is equitable to reduce the following billing entries by half, because these time entries are a result of responses by Debtor to Shanahan's arguments that related, explicitly or implicitly, to Debtor's failure to mitigate:

(1) 5/31/16 (Telephone conversation with client re: allegations raised by Shanahan to contempt charge; consideration of stipulation to continue contempt proceeding) $100
(2) 9/4/16 (Research and preparation of initial draft of reply brief) $1,720
(3) 9/5/16 (Preparation of final draft of reply brief) $1,080
(4) 9/8/16 (Review of reply brief to opposition to motion for contempt and revisions thereto) $560
(5) 10/7/16 (Review of supplemental brief of Lawrence Shanahan re: inadvertent violation of the automatic stay; review of case cited and shepardized cases citing same; communication with client) $720
(6) 10/14/16 (Preparation of initial draft of reply to supplemental brief of Shanahan re: violation of stay; review of cases in opposition) $920
(7) 10/17/16 (Preparation of completion of reply brief to supplemental response filed by Shanahan; declaration of Bryson in support) $1,320

The amounts listed above aggregate $6,420, and, therefore, the Court will impose a reduction of $3,210 from the $8,204.50 identified above. Shanahan will be solely liable for the remainder, totaling $4,994.50 in fees.

Finally, the Court has reviewed the billing records of Bryson and finds the fees to be generally reasonable. The Court notes that the billing records contain some instances of lumping of services or "block billing." The Court is satisfied, however, that it is sufficiently able to ascertain the reasonableness of the fees requested from the records provided. Nevertheless, the Court has identified the following entry as not reasonable and necessary for the underlying matter:

(1) 7/12/16 (Telephone conversation with client re: Shanahan stalking him and watching his activities in relation to pending motion for contempt for violation of stay) $160

Therefore, the Court will reduce the remaining amount by $160. Respondents will split liability for the remaining $15,085.50, with Rudat and Shanahan each liable for $7,542.75.

V.    *Punitive Damages*

Debtor requests punitive damages in the amount of $15,547.92 – equivalent to six months of Debtor's mortgage payment. The standard for imposition of punitive damages for violation of the automatic stay is whether the violator engaged in "egregious, intentional misconduct." *McHenry v. Key Bank* (*In re McHenry*), 179 B.R. 165, 168 (9th Cir. BAP 1995). The Ninth Circuit has observed that it has "traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." *Goichman v. Bloom* (*In re Bloom*), 875 F.2d 224 (9th Cir. 1989). In approving an award of punitive damages, the *Bloom* court noted that the creditor had taken several steps in pending litigation after receiving formal notice that it was violating the stay and "blatantly attempted to circumvent the jurisdiction of the bankruptcy court by filing an [unjustified] motion to withdraw the reference." *Id*. One fair reading of the "reckless or careless disregard" standard in *Bloom*, therefore, apparently refers to a

creditor's abuse of the legal process, not to general negligence or failure in business record-keeping. *See In re Youssef*, 2011 WL 3298903, at *6 (9th Cir. BAP 2011)(unpublished).

Rudat failed to reconvey the recorded deed until November 21, 2016. Rudat's filing of a motion for relief from automatic stay which sought to retroactively annul the stay to allow for the recording is sufficient proof that Rudat knew the recording of the deed violated the automatic stay. Furthermore, Rudat failed to comply with this Court's November 8, 2016 written order directing reconveyance of the property by November 16, 2016, and when given a further 48-hour extension, failed to record the reconveyance again. Ultimately, it took approximately eleven months, and approximately six months after the filing of the OSC, for Rudat to reconvey the property. Rudat's pattern of indifferent behavior towards Debtor's rights and the bankruptcy law constitute the kind of egregious, intentional misconduct that warrants punitive damages. Rudat has not persuaded this Court that her actions are the type of general negligence that would justify a denial of the Debtor's request for punitive damages. Based on the foregoing, the Court is inclined to grant punitive damages.

The Debtor's rationale for the amount of punitive damages sought is valid. In the Court's exercise of discretion, however, the Court will reduce the amount of punitive damages as Debtor has pointed to no significant factual prejudice that he suffered by Rudat's failure to reconvey the recorded deed, and it does not appear that Rudat's delay materially affected Debtor or Debtor's use of the subject property. On the other hand, to be clear, however, the failure to reconvey clearly presents legal prejudice as a cloud on title, and there is little question that this matter would have been largely, or entirely avoided, had Rudat simply reconveyed the deed immediately upon denial of her motion to annul, Therefore, the Court will exercise its discretion and award punitive damages against Rudat in the reduced amount of $5,000.

### D. **CONCLUSION**

In accordance with the discussion above, the Court assesses the following damages in favor of Debtor: (1) Rudat is liable for $14,926.75 and (2) Shanahan is liable for $12,537.25, which amounts are to be paid to Debtor within sixty days of entry of this order. IT IS SO ORDERED.

###

Date: March 13, 2017

Mark Houle
United States Bankruptcy Judge